## VALIDITY OF THE LEASE TO PROPERTY HELD BY A MUNICIPALITY.

Common Pleas Court of Franklin County.

CITY OF COLUMBUS v. OTTO M. SPIELMAN ET AL.

Decided, December 22, 1916.

*Municipal Corporations—Appropriation of Money in Excess of Revenue —Not a Matter of Concern to a Creditor of the Municipality, When —Application of the Burns Law of Rentals Accruing Against a City—May Lease Property Without Obtaining Approval of the Board of Control—Section 4403.*

1. That a municipality has appropriated money in excess of its revenues is a matter of no concern to a party dealing with it who receives his money in due course, and such a situation does not afford grounds for refusing relief to a city from the forfeiture of a lease held by it.
2. Moreover, the Burns law has no application to a year's rental appropriated out of the proceeds of a lawful issue of bonds, nor can said law be construed as applying to rental for subsequent years under the same lease.
3. A lease entered into by the proper officers of a municipality for property needed for municipal purposes, is not rendered invalid by reason of the fact that it is a contract involving an expenditure of more than $500 and was not approved by the board of control.

BIGGER, J.

This action is brought by the city seeking the aid of equity to relieve it from a forfeiture of a lease. I shall not attempt to state at length the averments of the pleadings, but state briefly my conclusion based upon the evidence and the law.

First, the court concludes that if the city of Columbus has a valid contract of lease, upon the evidence and the law, it is entitled to the relief prayed for.

The breach was a technical one and can be compensated by the payment of the amount due with interest.

As to the argument that the breach of the city was willful in that it had through its city council appropriated a large amount

of money beyond its revenues, it is to be said that it is a matter of no concern to the defendants whether the city had exceeded its revenues or not, provided the city obtained the money by borrowing it so as to satisfy the defendants' claim for rent, and this it appears the city has done, but in so doing was in arrears for payment one day beyond the time limited by the lease for payment. The court concludes, therefore, that if the city has a valid lease it should be relieved upon the facts from the forfeiture thereof.

But it is contended that the lease is invalid for two reasons: first, because the Burns law was not complied with; and second, because the board of control did not approve the contract.

As to the first ground of this contention that the city auditor had not certified that the money was in the treasury, I am of the opinion that in the light of the decisions in this state construing the Burns law, it has no application to this contract, because as to the amount of the first year's rent, it was provided for out of a bond issue and was not payable out of the general revenues of the city for the current year. The city having sold the bonds, appropriated out of the proceeds sufficient to pay the amount of the first year's rent. There is no claim that the city was without authority to issue the bonds and make the appropriation of the proceeds. *City of Akron* v. *Dobson*, 81 O. S., 56.

Furthermore, it is expressly provided by statute—Section 3810—that money to be derived from lawfully authorized bonds or notes sold or in process of delivery shall, for the purposes of the certificate that money for the specific purpose is in the treasury, be deemed in the treasury and in the appropriate fund.

As to the annual rent to accrue in subsequent years under the lease, in the opinion of the court the Burns law is not applicable. The law can not be construed to mean that the entire amount to be paid as rent under a lease running for a term of years shall be collected and hoarded in the treasury until it shall become due.

Judge Hunt, of Cincinnati, in a case reported in 12 N.P.(N. S.), 633, collects the Ohio cases on the subject decided up to the date of that decision and well states the general exceptions to the applicability of this law on page 635 and in which he says it is not applicable to cases where such expenditures are to be distributed over periods of time, during each of which periods the necessary money is to be raised by the exercise of powers specifically given therefor. It is not a sufficient answer to this construction of the Burns law to say that its wholesome provisions might be avoided by the simple expedient of postponing the maturity of obligations. It is to be assumed that when a case presenting such attempted evasion arises, the provisions of the law will be applied without regard to such attempted evasions. But in the case at bar the statute expressly empowers municipal corporations to execute leases. No time limit is imposed upon the municipal corporations in this respect. In the case at bar the lease is for five years with a right to renew for five years more. There is here plainly no attempted evasion of the provisions of the Burns law and it seems clear to the court that the Burns law has no application to such a case.

The court realizes that the decisions are not altogether harmonious, but it is the duty of the court to decide it in the absence of a controling decision upon the exact question in point in accordance with what is considered to be the better reasoning.

But it is said by counsel for the defendants that Section 3809 engrafted upon the Burns law certain exemptions from the operation of that law and that a lease by the city for a term of years is not one of them, and that upon the doctrine of *expressio unius exclusio alterius,* the court has no right to extend the exemptions therein specified. Counsel says that the Legislature could just as well have exempted a lease such as this, as to have exempted from its operations a contract with an electric light company. That overlooks, however, the fact that at the time of the enactment of this act exempting certain kinds of contracts, the provisions of the statute which confers the right upon municipalities to execute leases for land needed for any municipal pur-

pose, was not in existence. The section containing these exemptions provided that the city might lease an electric light plant and then proceeded to exempt such a lease from the operation of the Burns law. It could not have included such a lease as this for the reason that the city was not then empowered to enter into such a lease.

Upon the subject of the application of this doctrine of *expressio unius exclusio alterius,* it is stated by the writer of the article on statutes in 26 Am. & E. Enc. of Law that:

"Where there is some necessity for mentioning a particular thing, and none for mentioning another thing, to require the mentioning of the former as intended to exclude the latter, would be an exceedingly unnatural and unreasonable rule of interpretation."

Applying this principle to the case in hand when these exemptions were engrafted upon the Burns law, there was necessity for exempting leases of electric light plants for the reason that the section itself authorized such a lease. But the fact that a thing does not exist is a sufficient reason for not mentioning it, and the general power to lease land for municipal purposes did not then exist. But the very fact that the lease which was then authorized was exempted, shows the legislative purpose with respect to contracts of a similar character in so far as the application of the Burns law is concerned, and is an expression of the view of the Legislature that such are not intended to be embraced within the terms of the Burns law.

The second objection to the validity of the lease is that the contract was not approved by the board of control. Section 4403 of the civil code provides that:

"No contract in the department of public service or the department of public safety in excess of $500 shall be awarded except on the approval of the board of control, which shall direct the director of the appropriate department to enter into it."

Section 4371 provides that:

"The director of public safety may make all contracts and expenditures of money for acquiring lands for the erection and

repair of station houses, police stations, fire department buildings, fire systems, and plugs that may be required and for the purchase of engines, apparatus and all other supplies necessary for the police and fire departments and for other undertakings and departments under his supervision, but no obligation involving the expenditure of more than five hundred dollars shall be created unless first authorized and directed by ordinance of council.''

These two sections of the municipal code were originally parts of the same act, Section 4371 being Section 154 of the act and Section 4403 being Section 154a of the same act. 99 O. L., 564-565.

It would seem from a cursory reading of these two sections that the Legislature had here provided a situation which would lead to a conflict of authority between the city council and the board of control. The director of public safety is here forbidden seemingly to make any contract involving an expenditure in excess of $500, unless it be first authorized and directed by both the city council and the board of control. In case one of the two bodies should direct the director of public safety to enter into a certain contract, while the other refuses to authorize and direct it, which is to control the director in the exercise of his official functions? In my opinion, when these two sections are properly construed no conflict of authority can arise between the council and the board of control. Section 4403 is intended as a check upon the exercise of the powers of contract conferred upon the director of public safety only and was not intended as a check upon the action of the council in the exercise of the powers conferred upon it to authorize and direct the making of contracts by the director. In the great majority of cases the authority and direction of council for the making of a contract in the department of public safety is not special and particular, but general. The great majority of cases of contracts entered into by the director of public safety are contracts which are to be awarded to the lowest and best bidder, in which case the authority and direction of the city council contains no direction that the director shall contract with any particular individual or

upon any specific terms. When it comes to a contract such as is here in question, however, the principle of competitive bidding can not be applied. The city desires to obtain a particular piece of property, which by reason of its location or suitableness in other respects it is especially desirable that the city shall obtain and the contract can be made only with the owner of it. In such case the director seeks authority and direction from the city council to enter into that specific contract and the city council authorizes and directs that specific contract to be entered into. In such case, in the opinion of the court, it could not have been the legislative intention that the board of control should exercise what in effect would be the veto power, which the statute gives to the mayor of the city. When only general authority and direction to the director of public safety is given by ordinance of the council, as for the purchase of materials and equipment, or for the erection of needful structures for the department, and he is called upon to exercise his judgment and discretion as to the particular individual with whom he shall contract and the terms upon which the contract shall be let, then as a check upon the exercise of that discretion, before he can award such a contract he must obtain the approval of the board of control. Thus construing these sections, it is apparent that no conflict of authority can arise between the city council and the board of control; and in the opinion of the court this was the legislative purpose and intention and that the provision of the statute which requires the approval of the board of control is a provision intended as a check upon the exercise of the discretion reposed in the director, and that when he has no discretion the reason for such provisions fails and therefore the provision for such approval does not apply.

I conclude, therefore, that the contract of lease is a valid and enforcible one and that the city is entitled to the relief prayed for and an entry may be drawn to that effect.